# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL LEE STROPE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) No. 06-3288-CM |
| **WILLIAM CUMMINGS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

Plaintiff Michael Lee Strope, a.k.a. Gordon Eugene Strope, currently a prisoner at the El Dorado Correctional Facility, brings this civil rights action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. The two remaining defendants in this action are Louis E. Bruce and Steve Schneider, each of whom were employed at the Hutchinson Correctional Facility ("HCF") at times relevant to plaintiff's complaint. Bruce, now retired, was the Warden of HCF, and Schneider was a public information officer. Plaintiff claims, *inter alia*, that these two defendants, acting in their official and individual capacities, violated his First and Eighth Amendment rights and rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, in the following ways:

- Defendant Bruce violated plaintiff's First and Eighth Amendment rights by denying him kosher meals from June 1, 2006 to June 6, 2006;

- Defendant Bruce violated plaintiff's First and Eighth Amendment rights and his rights under RLUIPA by failing to take corrective action, failing to train, and being deliberately indifferent to health risks created by ARAMARK, Inc. ("Aramark"), regarding the service of spoiled or repetitive foods in unsanitary conditions;

- Defendant Bruce violated plaintiff's First Amendment rights by retaliating against him for his filing of past grievances regarding the continued service of spoiled foods; and

- Defendants Bruce and Schneider violated plaintiff's First Amendment right to access the

courts when defendant Schneider unlawfully searched, censored, and seized Grievance Number BA00013631 from plaintiff's personal property on July 11, 2006.[1]

Plaintiff seeks declaratory and injunctive relief and monetary damages. The case is now before the court on Defendants' Motion for Summary Judgment (Doc. 69). For the following reasons, this court grants summary judgment for defendants.

## I. Factual Background[2]

KDOC contracts with Aramark to provide food service to all of KDOC's correctional facilities, including HCF. Plaintiff is on the approved kosher diet. Plaintiff's complaint relative to the above-named defendants is based on the following facts, which are largely uncontroverted.

**Denial of Kosher Meal**

In early June 2006, plaintiff was moved to HCF from another facility, and, although he had previously been identified as requiring a kosher meal, he was denied a kosher meal from June 1 through June 6, 2006. Plaintiff filed Grievance number BB00013759 on June 6, 2006, against defendant Bruce and others claiming that he was vindictively denied kosher meals for six days. Defendant Bruce responded to plaintiff's grievance stating in relevant part:

> It is important that you contact Security staff, Unit Team or Food Service staff regarding your special diet. 5 days is unacceptable, but staff cannot act if they are not aware. Often times paperwork does not always follow the offender in a timely manner. Finally, K.A.R. 44-15-101(b) and 44-15-102(a) require offenders to seek information, advice, or assistance from the unit team before filing a formal grievance.

---

[1] These claims are outlined in Counts 4–7, 12, 15–16, and 21. All other claims in this case, as pleaded in Counts 1–3, 8–11, 13, 14, and 17–20 of the amended complaint, have been dismissed by the court. (Doc. 68, at 4.)

[2] The facts are largely uncontested. The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56 and includes only those that are relevant, material, and properly supported by the record.

(Doc. 29-22, at 3).

On August 29, 2006, the Secretary of Corrections Designee William Cummings responded to the appeal of the grievance finding the response rendered to the inmate by staff at the facility was appropriate.

According to defendants, only inmates that are listed as being on the kosher diet are provided kosher meals. In the instant motion, defendants assert that when plaintiff was transferred from LCF to HCF he was not entered into Aramark's system as being on the kosher diet. Therefore, he was not provided with a kosher meal from June 1, 2006 to June 6, 2006.

Plaintiff asserts that he was in fact in the system as being on the kosher diet as evidenced by his identification and documentation, and that, regardless, it was defendant Bruce's responsibility, pursuant to KDOC policy, to ensure that information regarding inmates receiving modified diets be forwarded within twenty-four hours. (Doc. 70, at 2, 6.) In his response to the instant motion, he also appears to assert that he was denied any meal for the five days in question. This allegation is inconsistent with plaintiff's own prior statements that he was offered meals from the regular meal line during this time, but "refused to eat the regular line trays." (Doc. 29-11, at 31.)

**Condition of Food, Repeating Food, Insufficient Time to Eat**

Plaintiff also filed a number of grievances relating to food service issues allegedly occurring in June and July 2006. These grievances complain of "nasty conditions and deprivations of a balanced diet by Aramark staff, et al., and Warden Bruce, et al.," including allegations that "Koshers are being served spoiled fruits and wilted salads daily" and "Koshers are often served the same thing 2-3 days in a row, especially chili/beans/rice," (Doc. 29-16, at 2, 4); Koshers "are not being provided a balanced diet." (Doc. 29-15, at 6); and Koshers are being "[denied] of approved special diet, [denied] of time to eat meals and religious persecutions . . . ." (Doc. 29-20, at 7.)

-3-

Members of Aramark's staff responded to plaintiff's grievances stating that: staff had been "trained in food safety"; the dining halls pose no health threat; the kosher diet menu is approved by the State of Kansas; Aramark does not serve spoiled food—spoiled food is discarded. (Doc. 29-15, at 8; 29-16, at 5.) Staff noted that:

> On 7-29-06, we did serve the same thing (for dinner only) that we did the night before. We were out of the menu correct meal at the time of the incident, however, we should have replaced a chicken meal with a chicken meal and not one that was served the night before. The supervisor that was on duty that day has been verbally counseled and trained on the mistake that she made.

(Doc. 29-15, at 8.)

Upon investigation of plaintiff's allegation that he was denied time to eat, plaintiff's counselor concluded that no one had been "corrected" for "coming back from mealing 'late'"; inmates are allowed to eat "until they are done"; no one had complained about not getting their special diet; and, although plaintiff may "occasionally have to eat during the regular mealine," he was "receiving the proper meal and [was] getting the time [he] need[ed] to eat it." (Doc. 29-20, at 8.)

Defendant Bruce responded to plaintiff's grievances. Among his responses pertinent to plaintiff's allegations of constitutional violations are the following:

> I have investigated your claims in regards to health and sanitation. I find no violations of your 1st, 8th, and 14th amendment rights. The Kosher diet menu is approved by the State of Kansas not Aramark. We are currently looking at making some additional changes to the religious diets that I believe the offender population will view as positive in preparation and service.

(Doc. 29-16, at 3.)

> You have brought these issues [regarding food service] up several times in previous grievances. I am aware of your concerns. Sanitation issues have been addressed. The condition of food has been addressed. Corrective actions are being taken. You have been inappropriately using the grievance procedure. You repeatedly file grievances without seeking informal resolution through your assigned counselor.

> When you operate outside the grievance procedure you tie up staff time. When you
> experience disparity in treatment you fail to bring it to the attention of a staff member
> who can immediately address your concerns. I encourage you to immediately notify
> the shift supervisor when food service issues concern you.

(Doc. 29-15, at 7.)

Regarding plaintiff's grievance that he was denied time to eat, defendant Bruce responded noting that, upon further investigation, defendant Bruce was satisfied that plaintiff's counselor addressed plaintiff's concerns, and defendant Bruce concurred with the counselor's response.

Upon plaintiff's appeal of each of these grievances, William Cummings responded finding that the response rendered by staff at the facility was appropriate.

**Search and Seizure, Denial of Access to Courts**

Plaintiff also filed a grievance alleging that defendant Bruce and defendant Schneider unlawfully searched, censored, and seized his legal materials, "obviously reading them," when they removed documents from his files and photocopied them. (Doc. 4, at 8; Doc. 4-1, at 21.) Plaintiff's counselor noted plaintiff's complaint regarding the search of his living area, which was documented in a Shakedown and Search Report. The report indicates that a copy of grievance BA00013631 was "temporarily seized, copied, and returned." (Doc. 4-1, at 22.) Noting that there was no evidence plaintiff's legal files were read or that anything was permanently removed from his possession, the counselor concluded that as a KDOC inmate, plaintiff's living area was subject to search anytime. Upon review, defendant Bruce found the response to be appropriate, and concurred with the position contained in the response. (Doc. 4-1, at 23.)

Plaintiff filed the complaint in this case on October 16, 2006. He filed an amended complaint on March 1, 2007. Supporting the complaint are copies of grievances, responses, reviews

on appeal of grievances, and incident reports. (Doc. 4-1, 1–49.) A *Martinez* report was filed.[3] (Doc. 29.) In the instant motion, defendant Bruce asserts that he is entitled to summary judgment on all of plaintiff's claims because plaintiff fails to allege that Bruce "personally paprticipated" within the meaning of 42 U.S.C. § 1983.

Additionally, both defendants assert that there is insufficient factual evidence to support plaintiff's claims against them, and that, to the extent plaintiff seeks money damages against defendants in their official capacities, his claims are barred by the Eleventh Amendment. *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996).

## II. Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

---

[3] In *pro se* prisoner litigation, the Tenth Circuit endorses the use of a "*Martinez* report," a record compiled by prison officials of the factual investigation of the events in the case. *See Martinez v. Aaron,* 570 F.2d 317, 319 (10th Cir. 1978). The *Martinez* report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1111). Likewise, the *pro se* prisoner's complaint, when sworn and made under a penalty of perjury, is also treated as an affidavit. *See id.* Both serve as evidence for a summary judgment determination. *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

The court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

When, as here, a plaintiff is proceeding *pro se*, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001). Liberal construction does not, however, "'relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based.'" *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court need not accept as true those allegations that state only legal

conclusions. *See id*. at 1110 (10th Cir. 1991).

**III. Discussion**

Section 1983 does not create substantive rights, but merely provides a remedy for deprivations of federal rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). To sustain a cause of action based on 42 U.S.C. § 1983, a plaintiff must establish two elements: (1) that he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) that the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Baker v. McCollan*, 443 U.S. 137, 140 (1979) (a necessary inquiry in any § 1983 case is whether the plaintiff has been deprived of a right secured by the Constitution or laws of the United States); *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (holding that individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) (holding that personal participation is an essential allegation in a § 1983 action).

It is well-settled that a defendant cannot be liable under § 1983 unless he or she directly and personally participated in the alleged deprivation of the plaintiff's constitutional rights. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Moreover, plaintiff must allege more than that a defendant was a supervisor or in charge at the jail. A defendant cannot be held liable for money damages in a civil rights action based solely upon his or her supervisory capacity under the theory of respondeat superior. *Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

Uncontroverted facts establish that defendant Bruce was the warden of HCF at all relevant times, and that he responded to grievances filed by plaintiff. However, plaintiff does not allege any

-8-

personal participation or that an "affirmative link" exists between defendant Bruce and the alleged constitutional deprivations in his amended complaint. *See Dodds v. Richardson*, No. 09-6157, 2010 WL 3064002, at *8–10 (10th Cir. Aug. 6, 2010) (reviewing standards for § 1983 supervisory liability in light of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); holding stricter burden on plaintiff still requires affirmative link; plaintiff must establish (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (holding that a supervisor is not liable under § 1983 unless an "affirmative link" exists between the constitutional deprivation and the supervisor's personal participation).

In his response to defendants' motion, plaintiff references the factual allegations contained in his complaint and asserts that defendants "did each personally participate in the unlawful conduct." (Doc. 70, at 3.) However, these are nothing more than conclusory allegations. The undisputed facts establish that, as to plaintiff's claims relating to food and food service, Bruce only reviewed and denied plaintiff's numerous grievances.

The mere "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Plaintiff's allegations against Defendant Bruce, the Warden of the facility, are insufficient as a matter of law. Plaintiff does not allege any personal participation by defendant Bruce or any actual affirmative link existing between defendant Bruce and the constitutional violations alleged in the complaint, nor does plaintiff allege the requisite state of mind. Defendant Bruce is entitled to judgment as a matter of law.

Similarly, plaintiff's allegation of denial of access to the courts fails on the undisputed

evidence. Plaintiff fails to "show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Plaintiff alleges only that defendants Bruce and Schneider unlawfully searched through his cell and photocopied a document. Plaintiff has not demonstrated how the inspection of items in his cell denied, delayed, or prejudiced him in relation to any litigation. Defendants are entitled to summary judgment.

Furthermore, even viewing the facts in the light most favorable to plaintiff, his First and Eighth Amendment and RLUIPA claims against defendant Bruce fail because he offers no evidence that a substantial burden was placed on the exercise of his sincerely held religious beliefs; he offers no evidence of deliberate indifference in the administration of food service; and he offers no evidence of a retaliatory motive. Although plaintiff's response to the instant motion asserts that there are "numerous facts in conflict between the parties," plaintiff does not controvert the facts contained in defendants' motion, with the exception of one immaterial question of whether he was "entered in Aramark's system" as being on the kosher diet. (Doc. 69-1, at 7.) Rather than "set[ting] forth specific facts showing that there is a genuine issue for trial," plaintiff offers only conclusory allegations. *Anderson*, 477 U.S. at 256. Although plaintiff proceeds *pro se* and this court has afforded him some leniency and construed his papers liberally, *see Hall*, 935 F.2d at 1110, the court is mindful that "'unsupported conclusory allegations . . . do not create a genuine issue of fact.'" *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (citation omitted). Even viewed in the light most favorable to plaintiff, the record—including the *Martinez* report, plaintiff's sworn complaint, and properly submitted affidavits and exhibits—and the parties' briefs reveal an absence of evidence relating to essential elements of plaintiff's claims. Because defendants are entitled to judgment as a matter of law, the court therefore grants defendants' motion.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc.

69) is granted.  This case is dismissed.

Dated this 24th day of September 2010, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**